IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–00802–CMA–KMT

JOHN MICHAEL BROADUS,

      Plaintiff,

v.

WARDEN RAE TIMME,
LIEUTENANT JACKIE MCCALL,
LIEUTENANT DIRECTO,
SERGEANT ERPS,
SERGEANT DAVIES,
CORRECTIONAL OFFICER HOLESTEAD,
CORRECTIONAL OFFICER MCCALL,
CORRECTIONAL OFFICER SNIDER,
CORRECTIONAL OFFICER LOPEZ,
CORRECTIONAL OFFICER STRICKLETT, and
ARISTEDES ZAVARAS,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This matter is before the court on the three pending motions to dismiss—"Defendant

Erps's Motion to Dismiss" (Doc. No. 52, filed Aug. 30, 2011 [Erps's Mot.]), "Defendant

Directo's Motion to Dismiss" (Doc. No. 57, filed Sept. 16, 2011 [Directo's Mot.]), and

Defendants Zavaras, Timme, Jackie McCall, Davies, Holstead, McCall,[1] Snider, Lopez, and

---

[1] Plaintiff's Amended Complaint (Doc. No. 8, filed June 2, 2011 [Am. Compl.]) names
two defendants with the last name "McCall"—Lieutenant Jackie McCall and Correctional

Stricklett's (hereinafter, collectively, the CDOC Defendants) "Motion to Dismiss Plaintiff's

Amended Prisoner Complaint (Doc. 8)" (Doc. No. 59, filed Sept. 16, 2011 [CDOC Defs.'

Mot.)—as well as Plaintiff's "Motion to Seek Leave" (Doc. No. 63, filed Oct. 3, 2011

[hereinafter "Motion to Amend" or "Mot. Am."]).  For the following reasons, the court

respectfully recommends that the motions to dismiss be granted and that Plaintiff's Motion to

Amend be denied without prejudice.

## FACTUAL BACKGROUND

The following facts are taken primarily from Plaintiff's Amended Prisoner Complaint

and the parties' submissions with respect to this Recommendation.  Plaintiff is an inmate with

the Colorado Department of Corrections ("CDOC").  At the time of the allegations outlined in

Plaintiff's Amended Complaint Plaintiff was an inmate at the Fremont Correctional Facility.

(Am. Compl. at 7.)

From May 2008 until October 2009, Defendant Erps allegedly subjected Plaintiff to

"constant sexual abuse and harassment." (*Id.* at 8.)  More specifically, Plaintiff alleges that, on

several occasions, Defendant Erps fondled Plaintiff's genitalia and buttocks, and snuck up

behind him and "grind[ed]" against Plaintiff "to the point where Plaintiff felt Defendant Erps'

genitals on his backside." (*Id.*)  Allegedly, this conduct took place in front of other inmates, as

well as Defendants Directo, Davies, McCall, Snider, Stricklett, and Holestead.  (*Id.*)  Defendant

Erps also allegedly pressured Plaintiff to expose himself and "talk sexual" to Defendant Erps.

_____

Officer McCall.  To avoid confusion, hereinafter, the court refers to the former as "Defendant
Jackie McCall" and the latter as simply "Defendant McCall."

(*Id.*)  When Plaintiff failed to engage in this sexual conduct, Plaintiff alleges he was either terminated from his position of employment or moved to other pods within the unit.  (*Id.*)

Over the same time period—May 2008 to October 2009—Defendant Directo allegedly physically assaulted Plaintiff.  (*Id.* at 8–9.)  Specifically, Plaintiff alleges that Defendant Directo "punched Plaintiff in the arms, chest, stomach" and "slammed Plaintiff up against walls."  (*Id.* at 9.)

In between March and April 2009, Plaintiff alleges he was used by Defendants Erps and Directo "as an instrument to control and physically assault other inmates."  (*Id.*)  Plaintiff asserts he was considered by these defendants as an "inside man."  (*Id.*)  Plaintiff states he was required to keep inmates in his pod under to control and had full discretion to confront, both physically and verbally, other inmates in situations "that affected the harmony of the pod as a whole."  (*Id.*)  When Plaintiff refused or failed to comply with this directive, Plaintiff maintains he was punished with "insulting rebukes, threats of employment termination, or actual physical assault by Defendant Directo."  (*Id.*)  Additionally, when Plaintiff failed to control his pod, Defendants Erps, Davis, and Directo allegedly moved Plaintiff to another pod or demoted his employment.  (*Id.*)

Plaintiff alleges that, on November 24, 2009, he and his family contacted Defendant Timme, the Warden of Fremont Correctional Facility, to inform the latter of alleged violations of the Prison Rape Elimination Act and physical assaults.  (*Id.* at 3, 10.)  Plaintiff and his family further alleged that Plaintiff was being retaliated against for "his threat of exposing the correctional officers involved in the crime against Plaintiff."  (*Id.* at 10.)  Plaintiff also informed

Defendant Timme that he believed he was being "set up." (*Id.*) Specifically, Plaintiff maintained that he was "being falsely charged with Assault and Robbery/Extortion." (*Id.*) Plaintiff maintains that Defendant Timme consequently "had ample opportunity to preserve Plaintiff's due process rights with respect to Plaintiff's disciplinary appeals" of his assault and robbery/extortion disciplinary convictions. (*Id.*) Instead, however, Plaintiff maintains that Defendant Timme "sat by and ignored the many complaints made by Plaintiff." (*Id.* at 11.)

On December 15, 2009, Plaintiff states he and his family contacted Defendant Zavaras, Executive Director of the CDOC, about the same allegations. (*Id.*) Defendant Zavaras forwarded Plaintiff's complaints to Defendant Timme for response. (*Id.*)

On December 17, 2009, Defendant Jackie McCall acted as chairman over Plaintiff's administrative segregation placement hearing. (*Id.* at 13.) Plaintiff maintains that the only evidence he was made aware of prior to or during that hearing was confidential information concerning the assault and robbery/extortion disciplinary allegations, which Plaintiff was convicted of on November 24, 2009. (*Id.*) Plaintiff alleges that Defendant Jackie McCall presented[2] evidence at the administrative segregation hearing that Plaintiff was not made aware of or given the opportunity to challenge, refute, or defend against. (*Id.*) This evidence was used to substantiate the decision to place Plaintiff in administrative segregation. (*Id.*)

---

[2] It is unclear to the court why Defendant Jackie McCall presented evidence at the administrative segregation hearing when she presided over the hearing as the "chairman of the board." (Am. Compl. at 13.) However, the court accepts Plaintiff's allegations as true, as it must at this procedural juncture.

## PROCEDURAL BACKGROUND

Plaintiff filed his Amended Complaint on June 2, 2011.  (*See* Am. Compl.)  Plaintiff's Claim One alleges that Defendants Erps, Directo, and Davies violated his Eighth Amendment rights to be free from cruel and unusual punishment.  Plaintiff's Claim Two alleges that Defendants Directo, Davies, Holestead, McCall, Snider, Lopez, Stricklett, Timmes, and Zavaras failed to protect Plaintiff, also in violation of the Eighth Amendment.  Finally, Plaintiff's Claim Three alleges that Defendant Jackie McCall's actions relating to the December 17, 2009 administrative segregation hearing violated Plaintiff's due process rights under the Fourteenth Amendment.[3]

Defendant Erps filed his Motion to Dismiss on August 30, 2011 (*see* Erps's Mot.) and Defendant Directo and the CDOC Defendants filed their respective motions to dismiss on September 16, 2011 (*see* Directo's Mot.; CDOC Defs.' Mot.).  Pursuant to D.C.COLOLCivR 7.1C, and Fed. R. Civ. P. 6(d), Plaintiff had until September 23, 2011 to respond to Defendant Erps' Motion, and until October 10, 2011 to respond to both Defendant Directo's and the CDOC Defendants' Motions.  However, Plaintiff did not file any responses by these dates, or at any time thereafter.

Instead, Plaintiff filed his Motion to Amend on October 3, 2011. (*See* Mot. Am.) Defendant Directo responded to Plaintiff's Motion to Amend on October 21, 2011 (Doc. No. 66

---

[3] Plaintiff's Amended Complaint also includes a Claim Four, alleging racial discrimination and equal protection violations; a Claim Five, alleging retaliation; and names Anthony A. DeCesaro as a defendant.  However, these claims were dismissed as legally frivolous and Mr. DeCesaro was dismissed as a defendant on July 12, 2011.  (*See* Doc. No. 10.)

[Directo's Resp. Mot. Am.]) and the CDOC Defendants file their response on October 24, 2011 (Doc. No. 67 [CDOC Defs.' Resp. Mot. Am.]).  Pursuant to D.C.COLOLCivR 7.1C, and Fed. R. Civ. P. 6(d), Plaintiff had until November 10, 2011 to file a reply in support of his motion to amend.  No reply was filed by that date or at anytime thereafter.  Accordingly, these motions are ripe for the courts review and recommendation.

## LEGAL STANDARDS

### A.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

**B.** *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation omitted).

### C.      *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss. *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645–46 (10th Cir.

1988).  Once the defense is asserted, the burden shifts to the plaintiff to establish 1) that the

defendant's actions violated a federal constitutional or statutory right and 2) that the federal right

was clearly established at the time of the challenged conduct.  *PJ ex rel. Jensen v. Wagner*, 603

F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646. While the plaintiff bears

this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true,

although the court must consider whether they plausibly give rise to a claim for relief.  *Weise v.*

*Casper*, 593 F.3d 1163,1166 (10th Cir. 2010).  The plaintiff first must establish that his

allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated

a constitutional right.  *Saucier*, 533 U.S. at 201.  If the plaintiff establishes a violation of a

constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly

established."  *Id.*  This determination must be made "in light of the specific context of the case,

not as a broad general proposition."  *Id.*  "[T]he relevant, dispositive inquiry . . . is whether it

would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted."  *Id.* at 202.  If the plaintiff fails to satisfy either part of this "heavy two-part

burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in

*Saucier*, holding that the sequence of the analysis is no longer mandatory.  *Pearson v. Callahan*,

555 U.S. 223 (2009).  The judges of the district courts and the courts of appeals are now

permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at

hand.  *Id.* at 236.  The Supreme Court noted, however, that the sequence set forth in *Saucier*

often is the appropriate analytical sequence.  *Id.*

## ANALYSIS

The court first addresses each of the pending motions to dismiss.  The court then turns to

Plaintiff's Motion to Amend.

## I.   *DEFENDANT ERPS'S MOTION TO DISMISS*

Plaintiff alleges only a single claim for relief against Defendant Erps—specifically,

Plaintiff's Claim One, alleging cruel and unusual punishment under the Eighth Amendment.  In

Claim One, Plaintiff alleges that Defendant Erps subjected Plaintiff to constant sexual abuse and

harassment.  (Am. Compl. at 8.)  Plaintiff also alleges that, along with Defendant Directo,

Defendant Erps used Plaintiff as an "inside man" to control and physically assault other inmates.

(*Id.* at 9.)  Defendant Erps argues these allegations fail to state a claim for relief.  (Erps's Mot. at

3-7.)  Defendant Erps also argues that Plaintiff's failure to state a claim against him means that

he, Defendant Erps, is entitled to qualified immunity.  (*Id.* at 8.)

### A.   *Sexual Abuse and Harassment*

The Tenth Circuit has held that sexual abuse and harassment may, in appropriate

circumstances, amount to an Eighth Amendment violation.  *Smith v. Cochran,* 339 F.3d 1205,

1212 (10th Cir. 2003); *see also Joseph v. U.S. Fed. Bureau of Prisons,* 232 F.3d 901, 2000 WL

1532783, at *1 (10th Cir. 2000) (unpublished table opinion).  "'[A]n inmate has a constitutional

right to be secure in [h]is bodily integrity and free from attack by prison guards,'" which

includes "the right to be free from sexual abuse."  *Smith,* 339 F.3d at 1212 (quoting *Hovater v.*

*Robinson,* 1 F.3d 1063, 1068 (10th Cir. 1993) & citing *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998)).

The court considers two prongs when evaluating sexual misconduct under the Eighth Amendment: "(1) an objective prong that asks 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation,' and (2) a subjective prong under which the plaintiff must show that 'the officials act[ed] with a sufficiently culpable state of mind.'" *Smith,* 339 F.3d at 1212 (quoting *Giron v. Corrections Corp. of Am.,* 191 F.3d 1281, 1289 (10th Cir. 1999)). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Joseph,* 232 F.3d 901, 2000 WL 1532783, at *1.

However, the Supreme Court has also determined that "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy,* 130 S.Ct. 1175, 1178 (2010) (internal quotation marks and citations omitted). In other words, "[a]n action by a prison guard may be malevolent yet not amount to cruel and unusual punishment." *Marshall v. Milyard,* 415 F. App'x 850, 852 (10th Cir. 2011) (citing *Hudson v. McMillan,* 503 U.S. 1, 9 (1992)).

A review of prior Tenth Circuit and District of Colorado cases draws into focus the line between sexual conduct that violates the Eighth Amendment, and that which, while still repugnant, does not rise to the level of a constitutional claim. As to the latter category, courts have concluded that inappropriate touching and sexual advances are not so "objectively,

11

sufficiently serious" as to "demonstrate a use of force of a constitutional magnitude." *Joseph,* 232 F.3d 901, 2000 WL 1532783, at *1 (concluding that allegations that a female prison employee "touched [the plaintiff] several times in a suggestive manner and exposed her breasts to him."). For example, in *Escobar v. Reid,* 668 F. Supp. 2d 1260, 1274, 1295-96 (D. Colo. 2009), District Judge Christine M. Arguello found that a plaintiff's allegations that a prison guard "groped Plaintiff's buttocks, [] asked Plaintiff to fondle his genitals, and [] passed a flat hand vertically up the crack of the Plaintiff's buttocks" failed to "describe treatment severe or depraved enough to state a constitutional violation." *See also Cooper v. Belcher,* 08-cv-1599-CMA-KMT, 2010 WL 3359709, at *7 n.14 (rejecting a claim premised on inappropriate touching of the plaintiff's genitals because "[a]llegations of suggestive touching, alone, are insufficient to give rise to a constitutional violation.")

Similarly, another magistrate judge this district concluded that, without more, a plaintiff's allegations that a prison guard "grabbed [his] penis and started rubbing it" and later "propositioned" him failed to articulate facts suggesting that 'the [offensive touching] was [conducted] in a manner which was so harmful as to be cruel and unusual.'" *Bunner v. Koch,* 08-cv-171–WYD–KLM, 2009 WL 798550, at *5 (D. Colo. Jan. 30, 2009). Altogether, "isolated episodes of harassment and touching . . . are despicable, and if true, they may potentially be the basis of state tort actions"; however, "they do not involve a harm of federal constitutional proportions as defined by the Supreme Court." *Boddie v. Schnieder,* 105 F.3d 857, 860-61 (2d Cir. 1997) (citing *Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994)) (finding that a Plaintiff's allegations that a correctional officer verbally harassed the plaintiff while touching his penis,

bumped into the plaintiff "so hard [he] could feel the points of her nipples against [his] chest," and pinned him against a door was not sufficiently serious or harmful to reach constitutional dimensions).

On the other hand, the Tenth Circuit has found that more severe or aggravated forms of sexual assault by prison officials will satisfy the objective prong of the Eighth Amendment inquiry.  *See Smith,* 339 F.3d at 1212.  *See also Boddie,* 105 F.3d at 861 ("there can be no doubt that severe . . . sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation.")  Thus, in *Smith*, the Tenth Circuit concluded that a plaintiff's allegations that she was forced to "expose herself" to the defendant, and that the defendant "raped her on several occasions, including once with a salt shaker" identified acts satisfying the objective prong of the Eighth Amendment inquiry.  339 F.3d at 1212.

Here, the court finds that Plaintiff's allegations fail to reach the threshold of establishing a constitutional violation.  Plaintiff's factual allegations include that Defendant Erps "[o]n several occasions, . . . fondled Plaintiff's genitalia/genitals and buttocks, as well as snuck up behind him and grind[ed] against Plaintiff to the point where Plaintiff felt Defendant [Erps's] genitals on his backside."  (Am. Compl. at 8.)  Plaintiff also alleges that Defendant Erps unsuccessfully pressured Plaintiff to do sexual acts such as exposing himself and talking in a sexual manner to him.  (*Id.*) These allegations, although despicable if true, do not rise to the level of a federal constitutional harm.  *Boddie,* 105 F.3d at 861.  Rather, Plaintiff's allegations of occasional inappropriate touching and solicitations are clearly more akin to the facts in *Escobar*

13

and *Joseph*, where the plaintiffs' allegations were found to be insufficient under the objective prong of the Eighth Amendment inquiry.

To be sure, Plaintiff alleges that Defendant Erps "subjected [him] to constant sexual abuse and harassment" for nearly a year-and-a-half. (Am. Compl. at 8.) However, the court finds this allegation to be conclusory insofar as it lacks any supporting *facts* regarding the severity or frequency of Defendant Erps's conduct. *Boddie,* 105 F.3d at 861 ("repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eight Amendment violation."); *Hall*, 935 F.2d at 1110 ("[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations"); *Matthews v. Wiley,* 744 F. Supp. 2d 1159, 1177 (D. Colo. 2010) (To state a claim for relief under the Eighth Amendment, a plaintiff must sufficiently allege "specific dates, circumstances, or conduct by the named Defendants"). Accordingly, the court finds that Plaintiff's allegations that Defendant Erps sexually harassed and abused him fail to state a claim for relief.

### B.      *"Inside Man" Allegations*

Defendant Erps argues that Plaintiff's "novel proposition" that Defendants Erps and Directo used Plaintiff as an "inside man" to "control and physically assault other inmates" fails to state a claim under the Eighth Amendment. (Erps's Mot. at 6–7.) The court agrees.

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm."

14

*Tafoya v. Salazar,* 516 F.3d 912, 916 (10th Cir. 2008).  None of these guarantees render Plaintiff's "inside man" allegations cognizable.  Arguably, as Defendant Erps suggests, an inmate *subject* to Plaintiff's physical assaults, supposedly authorized or directed by Defendant Erps, might have a cognizable claim to the extent they suffered serious bodily harm.  *See Smith,* 339 F.3d at 1212 (citing *Whitley v. Albers,* 475 U.S. 312, 319 (1986)) ("[T]he use of excessive force *against* a prisoner can violate the Eighth Amendment") (emphasis added).  However, Plaintiff does not allege that Defendant Erps used any force against Plaintiff when he refused or failed to carry-out his duties as an "inside man."  Rather, he only maintains that Defendant Erps "would move Plaintiff to another pod or demote his position of employment" when he failed to confront other inmates.  (Am. Compl. at 9.)  As such, the court finds that Plaintiff's "inside man" allegations fail to state a cognizable claim for relief under the Eighth Amendment.

Altogether, the court finds that Plaintiff's Claim One fails to state a claim for relief against Defendant Erps.  Additionally, because Plaintiff's allegations fail to establish that Defendant Erps violated his constitutional rights, the court finds that Defendant Erps is entitled to qualified immunity.  *Saucier*, 533 U.S. at 201.  Therefore, the court finds that Defendant Erps's Motion to Dismiss is properly granted.

## II.     *DEFENDANT DIRECTO'S MOTION TO DISMISS*

### A.     *Claim One*

Plaintiff's Claim One alleges that, over the same time period that he was sexually abused and harassed by Defendant Erps, "[Defendant] Directo physically assaulted Plaintiff" in violation of his Eighth Amendment rights.  (Am. Compl. at 8-9.)  Plaintiff alleges that Defendant

Directo "punched Plaintiff in the arms, chest, and stomach, as well as slammed Plaintiff up

against walls."  (*Id.* at 9.)  Additionally, as noted above, Plaintiff alleges that Defendant Directo

used Plaintiff as an "inside man" to control other inmates.  (*Id.* at 9.)  Defendant Directo argues

that these claims are insufficient to state a claim for cruel and unusual punishment and that,

consequently, he is entitled to qualified immunity.  (Directo's Mot. at 4-7, 9-10.)

### 1.   *Physical Assaults*

An Eighth Amendment excessive force claim requires the court to evaluate the same two

prongs considered *infra.* with respect to Plaintiff's sexual abuse allegations.  Specifically, the

court considers whether Defendant Directo's "alleged wrongdoing was objectively harmful

enough to establish a constitutional violation," and (2) whether Defendant Directo "acted with a

sufficiently culpable state of mind."  *Smith*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal

quotation marks and brackets omitted).  "The subjective element of an excessive force claim

turns on whether force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm."  *Id.* (internal quotation marks

omitted).

However, as already mentioned, "[a]n action by a prison guard may be malevolent yet

not amount to cruel and unusual punishment."  *Marshall,* 415 F. App'x at 852 (citing *Hudson*,

503 U.S. at 9).  "Not every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights."  *Hudson,* 503 U.S. at 9.  "Thus,

even if a use of force is deemed unnecessary after the fact, if it was both *de minimus* and 'not of

a sort repugnant to the conscience of mankind,' it will not sustain an excessive-force claim."
*Marshall,* 415 F. App'x at 853 (quoting *Hudson,* 502 U.S. at 10).

Here Plaintiff's allegations are simply too vague, general, and conclusory to state a claim for excessive force under the Eighth Amendment.  Plaintiff provides absolutely no context for his allegations that might allow the court to determine whether Defendant Directo's actions were malicious and sadistic, or instead a good-faith effort to maintain or restore discipline.  Without this factual context, it is unclear whether Defendant Directo's  conduct was merely *de mimimus,* or rises to the level of a cognizable Eighth Amendment claim.  *See Marshall,* 415 F. App'x at 853 (collecting cases involving seemingly significant conduct that was determined to be *de minimus* and, thus, not in violation of the Eight Amendment); *See Watts v. Zarvaras,* 09-cv-000980–BNB, 2010 WL 438738, at *2, 4 (D. Colo. Feb. 4, 2010) (allegations that a prison official "beat [the plaintiff] up on [F]riday 8-29-08," at best, alleged a *de mimimus* use of force).

Plaintiff's allegations regarding the injuries suffered as a result of Defendant Directo's conduct further evince the shortcomings of his claim.  "[A]lthough [Plaintiff] was not required to allege a significant injury in order to state an Eighth Amendment excessive-force claim, the extent of his injury 'may . . . provide some indication of the amount of force applied." *Marshall,* 415 F. App'x at 853 (citing *Wilkins v. Gaddy,*  --- U.S. ----, 130 S.Ct. 1175, 1178 (2010)). However, Plaintiff conclusory allegations that he "suffered pain and injury at the hands of" Defendant Directo do little to demonstrate the extent and nature of the force used by Defendant Directo.

### 2.    *"Inside Man" Allegations*

The court finds that, for the same reasons discussed above with respect to Defendant

Erps, Plaintiff's allegations Defendant Directo used Plaintiff as an inside man fail to state a claim

for relief under the Eighth Amendment.  Plaintiff does allege that Defendant Directo punished

him with "actual physical assault" when Plaintiff failed or refuse to carry-out Defendant Directo

and Erps' orders to keep other inmates in control.  (Am. Compl. at 9.)  However, this allegation

is too vague and conclusory to state a claim for excessive force.  *Hall*, 935 F.2d at 1110;

*Matthews,* 744 F. Supp. 2d at 1177.

### B.    *Claim Two – Failure To Intervene*

Plaintiff's Claim Two alleges that Defendant Directo and several other defendants

"witnessed the many instances of sexual abuse/harassment . . . by Sergeant Erps" and failed to

intervene or report this conduct.  (Am. Compl. at 10.) Plaintiff maintains that Defendant Directo

and the other defendants instead laughed and encouraged Defendant Erps.  (*Id.*)

A prison official can be liable under the Eighth Amendment if he or she "simply stood by

and observed a beating by other guards and failed to take action to stop it."  *Merritt v. Hawk,* 153

F. Supp. 2d 1216, 1224 (D. Colo. 2001) (citing *Burgess v. Moore,* 39 F.3d 216, 218 (8th Cir.

1994); *Sasa v. Zavaras,* 166 F.3d 1222 1998 WL 849764, at *3 (10th Cir. Dec. 9, 1998).  The

court sees no reason why this line of authority would not extend to a failure to intervene where

another guard sexually abuses an inmate.  However, "[e]stablishing a constitutional violation is a

necessary predicate to any claim that an officer failed to intervene."  *Mata v. City of Farmington,*

791 F. Supp. 2d 1118, 1156 (D.N.M. 2011) (citing *Hall v. Burke,* 12 F. App'x 856, 861 (10th

Cir. 2001)).  Here, as established above, Plaintiff's allegations that Defendant Erps sexually

harassed and abused Plaintiff do not adequately allege a violation under the Eighth Amendment.

Accordingly, Defendant Directo cannot be held liable for failing to intervene.

Altogether, the court finds that neither Plaintiff's Claim One or Claim Two state a claim

for relief against Defendant Directo.  Additionally, because Plaintiff's allegations fail to establish

that Defendant Directo violated his constitutional rights, the court finds that Defendant Directo is

entitled to qualified immunity.  *Saucier*, 533 U.S. at 201.  Therefore, the court finds that

Defendant Directo's Motion to Dismiss is properly granted.

### III.   CDOC DEFENDANTS' MOTION TO DISMISS

#### A.   Claim One – Inside Man Allegations

In Claim One, Plaintiff appears to allege that Defendant Davies also used Plaintiff as an

"inside man."  (*See* Am. Compl. at 9.)  The court finds that Plaintiff's allegations relating to

Defendant Davies fail to state a claim for relief for the reasons discussed above with respect to

Defendants Erps and Directo.

#### B.   Claim Two – Failure to Intervene

In Claim Two, Plaintiff alleges that, like Defendant Directo, Defendants Davies,

Holestead, McCall, Sinder, Lopez, and Stricklett failed to either reprimand or report Defendant

Erps's sexual harassment and abuse of Plaintiff; instead, they laughed and encouraged Defendant

Erps.  (Am. Compl. at 10.)  However, as discussed above with respect to Defendant Directo,

Plaintiff fails to allege a predicate constitutional violation by Defendant Erps.  Without this

predicate harm, the court finds that Plaintiff fails to state a claim for relief under the Eighth

Amendment based on Defendants Davies, Holestead, McCall, Snider, Lopez, and Strickletts' failure to intervene and prevent Defendant Erps's alleged sexual misconduct.  *Mata,* 791 F. Supp. 2d at 1156 (citing *Hall* 12 F. App'x at 861).

Plaintiff also alleges in Claim Two that Defendants Timme and Zavaras failed to intervene to protect Plaintiff's constitutional rights.  More specifically, Plaintiff alleges that, in November and December 2009, Plaintiff and his family contacted both Defendant Timme and Zavaras regarding Defendant Erps's conduct, which Plaintiff characterizes as "violations of the Prison Rape Elimination Act"; Defendant Directo's conduct; and a scheme to retaliate against Plaintiff for his threat to expose "the [c]orrectional officers involved in the crimes against Plaintiff."  (Am. Compl. at 10-11.)  Plaintiff also warned Defendants Timme and Zavaras that he was being falsely charged with assault and robbery/extortion, and thus these defendants had "ample opportunity" to prevent the alleged due process violations described in Plaintiff's Claim Three.  (*Id.*)   The CDOC Defendants maintain that these allegations fail to allege that Defendants Timme and Zavaras personally participated in any violation of Plaintiff's constitutional rights.  (CDOC Defs.' Mot. at 7-9.)

"Personal participation is an essential allegation in a § 1983 claim."  *Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976).  Generally, "§ 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."  *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008) (citing *Jenkins v. Wood,* 81 F.3d 988, 994-95 (10th Cir. 1996)).  Rather, an "'affirmative link' [must] exist[] between the constitutional deprivation and either the

20

supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993)).

The correspondence directed to Defendants Timme and Zavaras fails to establish any such affirmative link. The Tenth Circuit has held that receiving correspondence from an inmate does not demonstrate the personal participation required to trigger liability under § 1983. *Davis v. Ark. Valley Corr. Facility,* 99 F. App'x 838, 843 (10th Cir. 2004); *Campbell v. Milyard,* 09-cv-01041, 2010 WL 3023360, at *5 (D. Colo. July 29, 2010); *cf. Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) (denying a prisoner's grievance does not demonstrate a defendant's personal participation in an alleged constitutional violation under § 1983). To the extent that Defendant Timme responded to a letter submitted on Plaintiff's behalf, nothing in that response suggests that Defendant Timme participated in the alleged violation of Plaintiff's constitutional rights. (Am. Compl., Attach. C.) Rather, Defendant Timme merely conveyed that Plaintiff's allegations were investigated and that the findings of that investigation were addressed. (*Id.*)

Accordingly, the court finds that Plaintiff's Claim Two fails to state a claim against Defendants Davies, Holestead, McCall, Snider, Lopez, and Stricklett and fails to allege personal participation in any constitution violation by Defendants Timme or Zavaras. Additionally, because Plaintiff fails to establish that these defendants violated his constitutional rights, the court finds that they are entitled to qualified immunity. *Saucier*, 533 U.S. at 201; (CDOC Defs.' Mot. at 12-13.) Accordingly, the court finds that the CDOC Defendants' Motion to Dismiss is properly granted as to Plaintiff's Claim Two.

### C.       Claim Three – Due Process Violations

Plaintiff's Claim Three alleges that Defendant Jackie McCall denied Plaintiff his due

process rights with respect to the administrative segregation hearing that occurred on December

17, 2009.  (Am. Compl. at 13.)  Plaintiff alleges that Defendant Jackie McCall presided over that

hearing as "chairman of the board" and "presented evidence at the hearing that Plaintiff was not

made aware of nor given the opportunity to challenge, refute or prepare his defense against."

(*Id.*)  The CDOC Defendants maintain that Plaintiff's allegations fail to state a cognizable due

process claim.  (CDOC Defs.' Mot. at 9-12.)

"A due process claim under the Fourteenth Amendment can only be maintained where

there exists a constitutionally cognizable liberty or property interest with which the state has

interfered."  *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).  The

Supreme Court has recognized that, under certain circumstances, an inmate may have a liberty

interest in the conditions of his or her confinement.  *Sandin v. Conner,* 515 U.S. 472, 484 (1995).

However, "these interests will be generally limited to freedom from restraint which . . . imposes

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life."  *Id.* (internal citations omitted).

Whether confinement "conditions impose such an atypical and significant hardship that a

liberty interest exists is a legal determination."  *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir.

1997) (citing *Sandin*, 515 U.S. at 485-87); *Horton v. Zavaras,* No. 09-cv-02220-REB-KMT, at

*10 (D. Colo. June 11, 2010).  In assessing whether placement in administrative segregation

implicates a protected liberty interest, the Tenth Circuit has identified several relevant factors for

22

the court to consider, including whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . .; and (4) the placement is indeterminate." *Estate of DiMarco v. Wy. Dept. of Corrs.*, 473 F.3d 1337, 1342 (10th Cir. 2007). "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id.* (citation omitted).

Here, Plaintiff was placed in administrative segregation pursuant to a disciplinary conviction for assault and robbery/extortion. Thus, the first *DiMarco* factor favors Defendants as the purpose of segregation furthered a legitimate penological interest. *See id.* (finding that prison safety and security are legitimate penological reasons for assignment to administrative segregation).

Otherwise, Plaintiff's Amended Complaint is devoid of any factual allegations relating to the conditions of his confinement in administrative segregation. Plaintiff has not included any allegations regarding the nature or duration of his placement in administrative segregation that would allow the court to analyze the remaining *DiMarco* factors. As such, the court agrees with the CDOC Defendants that Plaintiff fails to demonstrate a liberty interest in avoiding placement in administrative segregation. Consequently, the court finds that Plaintiff fails to state a due process claim under § 1983 against Defendant Jackie McCall and that Defendant Jackie McCall is entitled to qualified immunity. *Saucier*, 533 U.S. at 201. Therefore, the CDOC Defendants' Motion to Dismiss is properly granted as to Plaintiff's Claim Three.

## IV.    *PLAINTIFF'S MOTION TO AMEND*

Plaintiff filed his Motion to Amend pursuant to Fed. R. Civ. P. 15(a) in order to "cure any deficiencies" raised in Defendants' respective motions to dismiss.  (Mot. Am. at 3.)  However, as Defendant Directo points out, Plaintiff's Motion to Amend fails to detail his proposed amendments and Plaintiff failed to attach a copy of his proposed amended complaint to his motion.  (Directo's Resp. Mot. Am. at 2.)  When seeking leave of the court to amend a complaint, the motion to amend must detail the proposed amendments and the reasons why such amendments are necessary.  In addition, a plaintiff must attach the proposed amended complaint to the motion.  The proposed amended complaint must stand alone; it must contain all of the plaintiff's claims.  Without attaching a proposed amended complaint, it is impossible for the court to determine if the proposed amendments are permissible.

Plaintiff did ultimately tender a proposed Second Amended Complaint on October 31, 2011.  (Doc. No. 63.)  However, this document was filed *after* Defendant Directo and the CDOC Defendants filed their respective responses to Plaintiff's Motion to Amend.  (*See id.*) Accordingly, these defendants have been deprived of an opportunity to argue that Plaintiff's proposed amendments fail to cure the deficiencies raised in their motions to dismiss or are otherwise impermissible.

Under these circumstances, the court finds it proper to deny Plaintiff's Motion to Amend without prejudice.  Nevertheless, the court finds that Plaintiff should be permitted to re-file his Motion to Amend, detailing his proposed amendments therein and attaching his proposed amended complaint.  This will allow Plaintiff to attempt to cure the deficiencies noted above, as

well as allow Defendants a  proper opportunity to argue that the proposed amendments are futile

or otherwise impermissible.  *See Campbell v. Milyard,* 09-cv-01041-CMA-KLM, 2010 WL

3023360, at *8 (D. Colo. July 29, 2010) (noting that a plaintiff should be permitted to file a

motion for leave to amend his complaint where the plaintiff's amendments would not necessarily

be futile and would not prejudice the defendants).  For this same reason, the court notes that,

while it finds that Defendants respective motions to dismiss are properly granted, any dismissal

of Plaintiff's claims should be without prejudice.  *Oxendine v. Kaplan,* 241 F.3d 1272, 1275

(10th Cir. 2001) (due to heightened concerns when the plaintiff is proceeding *pro se,* dismissal

with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the

facts he has alleged and it would be futile to give him an opportunity to amend.")

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that

"Defendant Erps's Motion to Dismiss," (Doc. No. 52), "Defendant Directo's Motion to

Dismiss," and Defendants Zavaras, Timme, Jackie McCall, Davies, Holstead, McCall, Snider,

Lopez, and Strickletts' "Motion to Dismiss Plaintiff's Amended Prisoner Complaint (Doc. 8)"

(Doc. No. 59) be GRANTED and that Plaintiff's claims against Defendants be DISMISSED

WITHOUT PREJUDICE.

The court further RECOMMENDS that

Plaintiff's "Motion to Seek Leave" (Doc. No. 63) be DENIED WITHOUT PREJUDICE,

and that Plaintiff be permitted to re-file his motion to attempt to cure the deficiencies noted in

this Recommendation.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of January, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge